# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NATE A. LINDELL,**
    **Plaintiff,**

  v.                                    Case No. 19-C-0827

**BRIAN GREFF, et al.,**
    **Defendants.**

## DECISION AND ORDER

Plaintiff Nate Lindell, a Wisconsin inmate, filed a pro se complaint under 42 U.S.C. § 1983. He alleges that 19 individuals within the Wisconsin Department of Corrections conspired to retaliate against him for exercising his First Amendment rights. In a prior order, I granted the plaintiff's motion for leave to proceed without prepayment of the filing fee and screened his complaint. *See* 28 U.S.C. § 1915 & 1915A. I dismissed the complaint on the ground that it failed to adequately allege that all 19 defendants were part of a single conspiracy to retaliate against the plaintiff. I determined that the plaintiff would be unable to cure the deficiencies that led to the complaint's dismissal, and therefore I did not grant him leave to amend. Instead, I directed the Clerk of Court to enter final judgment.

The plaintiff has filed a motion to vacate the judgment and grant him leave to amend his complaint. In this motion, he makes three arguments. First, he contends that I erred in determining that his original complaint did not adequately allege that all 19 defendants conspired against him. Second, he contends that, to the extent his first complaint did not adequately allege that such a conspiracy existed, his proposed amended complaint cures the problem. Third, he alleges that if I conclude that neither

the original complaint nor the proposed amended complaint state a claim for conspiracy against all 19 defendants, then I should allow this case to proceed against three of the defendants who allegedly retaliated against him: Brian Greff, Anthony Meli, and Jessie Schneider. The plaintiff asks that I then sever his claims against the remaining defendants into separate suits.

As explained below, I conclude that neither the original complaint nor the proposed amended complaint adequately alleges the existence of a single conspiracy among all 19 defendants. Therefore, under Federal Rule of Civil Procedure 20, the plaintiff cannot bundle all his claims against the defendants into a single suit. However, because the amended compliant states a claim for First Amendment retaliation against defendants Greff, Meli, and Schneider, I will set aside the judgment and allow this case to proceed against them. Further, I will grant the plaintiff an opportunity to identify which of his remaining claims he wishes to pursue in separate suits. For those that he wishes to pursue, I will use severance to create new actions.

I address one final matter in this order. It has come to my attention that the plaintiff incurred three "strikes" under 28 U.S.C. § 1915(g) before he commenced this action. Therefore, the plaintiff is ineligible to proceed without prepayment of the filing fee. Accordingly, I will set aside my earlier order granting him leave to proceed without prepaying it and direct the plaintiff to remit the full filing fee before any further action is taken on this case.

### I. CONSPIRACY ALLEGATIONS

In my prior opinion, I described the allegations of the complaint as follows:

The plaintiff alleges that, in January 2013, he was transferred from the Wisconsin Secure Program Facility to Waupun Correctional Institution, where he remained until December 2013. Both facilities are maximum-security prisons operated by the Wisconsin Department of Corrections. At Waupun, the plaintiff was housed in the "health and segregation complex." Prior to his transfer to Waupun, the plaintiff had written articles critical of the conditions at the Wisconsin Secure Program Facility. As soon as he arrived at Waupun, the plaintiff began writing complaints to various staff members about the conditions there. He also assisted other inmates with legal issues. According to the plaintiff, staff at the prison did not appreciate his consistent stream of complaints and lawsuits, and therefore they entered into a conspiracy to retaliate against him. The alleged conspirators included, among others, the "manager" of the health and segregation complex at Waupun, the "supervisor" of the same unit, at least eight correctional officers, the institution's disciplinary hearing officer, the institution's security director, the warden, the institution's inmate-complaint examiner, and several high-level officers within the Department of Corrections, including the Deputy Secretary and a former Secretary.

The alleged acts of retaliation consist primarily of a series of instances in which staff members wrote the plaintiff conduct reports and then various prison administrators found the plaintiff guilty of the charged conduct and/or failed to sustain his appeals or inmate grievances about the conduct report and resulting discipline. In each instance, a correctional officer or other staff member wrote the plaintiff a conduct report charging him with violating a prison rule. The plaintiff protested that the conduct report was unjustified, either because the correctional officer's account of the events that transpired was false or because the plaintiff had a reasonable explanation for engaging in the conduct at issue. At the disciplinary hearing involving the conduct report, the plaintiff presented what he thought was a meritorious defense. However, the hearing officer found the plaintiff guilty of the charges and imposed a sentence, which consisted of either additional time in disciplinary segregation or the loss of certain privileges. The plaintiff appealed the hearing officer's decision to the warden, but the warden affirmed. The plaintiff then filed an inmate complaint about the conduct report and disciplinary-hearing process, which the inmate-complaint examiner denied. The plaintiff appealed the denial to the appropriate higher-level authorities, including to the Deputy Secretary of the Department of Corrections, but his appeals were unsuccessful.

The plaintiff alleges that he was found guilty of unfounded conduct reports on approximately ten different occasions over the course of 2013. He alleges that his resulting disciplinary record prevented him from attaining a more favorable prison classification. The more favorable classification would have allowed him certain privileges, such as

> possession of a radio and access to legal periodicals. He also alleges that correctional officers took other adverse actions against him, such as denying him out-of-cell recreation time, because they did not appreciate his complaints about prison conditions.
>
> The plaintiff alleges that all acts of retaliation identified in his complaint were taken pursuant to a single conspiracy among all defendants to retaliate against him for exercising his First Amendment rights.

ECF No. 7.

The plaintiff agrees that I accurately characterized the nature of his claims. *See* ECF No. 9 at 1. However, he contends that I went too far in expecting him to plead proof of a conspiracy. But as I explained in my prior order, a "bare allegation" of a conspiracy does not state a claim. *See, e.g., Cooney v. Rossiter*, 583 F.3d 967, 970–71 (7th Cir. 2009); *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999). Especially when a case may be "paranoid pro se litigation" and the complaint alleges "a vast, encompassing conspiracy," the plaintiff must "meet a high standard of plausibility." *Cooney*, 583 F.3d at 971. To plead a plausible conspiracy, the plaintiff must allege facts showing an agreement among the defendants to inflict constitutional harm. *See, e.g., Ryan*, 188 F.3d at 860. "Such allegations usually take one of two forms: (1) direct allegations of an agreement, like an admission by a defendant that the parties conspired; or (2) more often, circumstantial allegations of an agreement, which are claimed facts that collectively give rise to a plausible inference that an agreement existed." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 827 (7th Cir. 2019).

The plaintiff does not address the cases I cited regarding the pleading standard for conspiracy claims. Instead, he cites other cases that, he contends, involved

4

conspiracy claims similar to his and which were allowed to proceed. *See Turley v. Rednour*, 729 F.3d 645 (7th Cir. 2013); *Fairley v. Andrews*, 578 F.3d 518 (7th Cir. 2009); *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2007); *Wilson v. Rundle,* 774 F. App'x 989 (7th Cir. 2019). However, while some of these cases involved conspiracies, none of them addresses the standard for *pleading* the existence of a conspiracy. In particular, they do not suggest that a conspiracy claim may proceed without pleading facts giving rise to a reasonable inference that all defendants entered into a single agreement. Thus, the plaintiff's cases do not suggest that I erred in dismissing his conspiracy allegations.[1]

In arguing that I erred in dismissing his conspiracy allegations, the plaintiff points to his allegations that one of the defendants—Greff—became exasperated with the plaintiff for repeatedly complaining about prison conditions and helping other inmates file grievances and lawsuits. However, these allegations only support the plaintiff's claim that Greff retaliated against him for exercising his First Amendment rights. They do not also support the plaintiff's allegation that the remaining 18 defendants entered into an agreement with Greff to retaliate against him. And it was the lack of allegations concerning the existence of such an agreement that caused me to dismiss the conspiracy allegations, not the lack of allegations concerning any given defendant's retaliatory motive. The plaintiff does not point to factual allegations in either his original

---

[1] The plaintiff cites some cases discussing the standard for pleading conspiracy. *See McMillian v. Litscher*, 72 F. App'x 438, 441 (7th Cir. 2003), and the cases cited there. However, these cases predate *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which adopted the "plausibility" requirement. After *Twombly*, to state a claim based on a conspiracy, a complaint must allege enough factual matter (taken as true) to suggest that an agreement was made. *Id.* at 556.

5

complaint or his proposed amended complaint giving rise to a reasonable inference that all 19 defendants entered into an agreement to retaliate against him.

The plaintiff suggests that I may reasonably infer that such an agreement exists because Greff—the manager of the unit in which the plaintiff was held—supervised many of the defendants. This is incorrect for two reasons. First, it is not reasonable to infer from the fact that a person is supervised by someone that the person has agreed to enter into an unlawful conspiracy with the supervisor to deprive a third party of his or her constitutional rights. Second, even if such an inference were reasonable (and it is not), the plaintiff does not allege that all 18 of the other defendants were supervised by Greff. Indeed, it appears that most of the other defendants were not supervised by him. Obviously, Greff did not supervise the warden of the institution (William Pollard), the Deputy Secretary of the DOC (Cindy O'Donnell), or the Secretary of the DOC (Ed Wall). He likely did not supervise the inmate complaint examiner or the other officials involved in reviewing the plaintiff's grievances. At most, the complaint suggests that Greff supervised the correctional officers who authored the conduct reports at issue in this case. But again, the mere fact that one person is supervised by another does not suggest that a conspiracy exists. Moreover, as I noted in my prior order, the plaintiff alleges that many correctional officers had their own reasons for retaliating against him. These reasons suggest that no agreement among the defendants existed and that, instead, each defendant acted independently.

In his proposed amended complaint, the plaintiff adds an allegation about a meeting at which defendants Greff, Schneider, and Meli were present. *See* Proposed Am. Compl. ¶ 85. The plaintiff alleges that his psychologist was at this meeting, during

6

which staff members "discussed problems and how to deal with them." *Id.* The psychologist told the plaintiff that Greff, Schneider, and Meli "told her that Lindell was going to be kept [at a certain unfavorable segregation status] until he stopped writing [inmate complaints] and lawsuits about conditions and stopped writing articles about conditions for his blog." *Id.* The plaintiff contends that this allegation supports his conspiracy claim. However, the allegation does not give rise to a reasonable inference that all 19 defendants entered into a conspiracy to retaliate against him. The most it shows is that Greff, Schneider, and Meli may have wanted to retaliate against him. It does not show that they recruited the other 16 defendants to help them carry out a retaliatory scheme.

For these reasons, I reiterate my earlier conclusion that the complaint fails to adequately plead the existence of a conspiracy among all defendants. Moreover, the proposed amended complaint does not improve matters, and therefore I conclude that granting leave to amend would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

## II. FURTHER PROCEEDINGS

In my prior order, I noted that it was possible the complaint stated retaliation claims against individual corrections officers. I explained, however, that the plaintiff had not expressed interest in pursuing those separate claims, and that, in any event, the separate claims could not be joined into a single action under Federal Rule of Civil Procedure 20. I thus dismissed the claims without prejudice to the plaintiff's ability to refile them in separate suits.

In his latest motion, the plaintiff states that he wishes to use this action to pursue a retaliation claim against Greff, Meli, and Schneider based on their alleged agreement to keep the plaintiff in an unfavorable segregation status until he stopped filing grievances and lawsuits. Because the complaint states such a claim against these three defendants, I will allow it to proceed.

The plaintiff also contends that I should sever the claims against the remaining defendants into separate lawsuits rather than dismiss them without prejudice. He notes that the statute of limitations has already run on those claims, and that therefore a dismissal without prejudice would have the effect of a dismissal with prejudice. His point is well taken. However, before I sever the claims and create new suits, I will ask the plaintiff to identify which suits he intends to pursue after they are severed. When a court severs a misjoined claim, the plaintiff is required to pay the filing fee for the severed action. *See Taylor v. Brown*, 787 F.3d 851, 853 (7th Cir. 2015). Thus, for each new action I create, the plaintiff will incur a new filing fee. I believe the plaintiff should have the opportunity to indicate which cases he wishes to pursue before I create the actions and assess the fees.

To assist the plaintiff in deciding which cases he wants to pursue, I will explain how I would sever them. Essentially, I would create a separate action for each of the allegedly retaliatory conduct reports written by someone other than Greff, Meli, or Schneider. By my count, that is eight new actions, one for the conduct report by Endres, one for the conduct report and alleged excessive force by Moungey, and one for each of the conduct reports issued by Bleiler, Cushing, Klemmer, Ross, Kubat, and Umentum.

8

## III. REVOCVATION OF IFP STATUS

Finally, it has come to my attention that the plaintiff has, on three or more occasions before he filed this suit, brought an action or appeal in a court of the United States that was dismissed on the grounds that it was frivolous, malicious, or failed to state a claim upon which relief may be granted.[2] Therefore, the plaintiff is ineligible to proceed *in forma pauperis* ("IFP") in this action unless he is "under imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g). The present action involves events that transpired in 2013, and thus the imminent-danger exception does not apply. I therefore should not have granted the plaintiff leave to proceed IFP in this action, and I will correct that oversight by revoking the plaintiff's IFP status. If the plaintiff intends to proceed with this case, he must first pay the full filing fee. Moreover, the plaintiff will have to prepay the full filing fee for any severed action he chooses to pursue.

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiff's motion to vacate judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that the judgment entered on September 19, 2019 is **VACATED** and the plaintiff may proceed with a retaliation claim against defendants Greff, Meli, and Schneider. The court will also create severed actions for any remaining claims the plaintiff elects to pursue instead of dismissing those claims without prejudice. In all other respects, the motion is **DENIED**.

---

[2] Magistrate Judge Duffin of this court determined that the plaintiff has four strikes. *See* E.D. Wis. Case No. 19-cv-255, ECF No. 41.

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to file an amended complaint is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's leave to proceed *in forma pauperis* is **REVOKED**.

**IT IS FURTHER ORDERED** that the plaintiff must pay the full filing fee for this action ($400, which includes a $50 administrative fee) on or before **June 5, 2020**, or this case will be dismissed for failure to pay the fee.

**IT IS FURTHER ORDERED** that, on or before **June 5, 2020**, the plaintiff must identify which of the eight severed actions I identified in Part II of this opinion he intends to pursue. If the plaintiff does not identify the actions by that date, I will assume he does not intend to pursue any of them and will dismiss the severed claims without prejudice.

Dated at Milwaukee, Wisconsin, this 4th day of May, 2020.

s/Lynn Adelman
LYNN ADELMAN
United States District Judge